# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
## (Case No. 13-15723)

---

In Re: NETFLIX PRIVACY LITIGATION

JEFF MILANS, PETER COMSTOCK,
Individually and on behalf of all others similarly situated,

Plaintiffs/Appellees

GARY WILENS,

Objector/Appellant

v.

NETFLIX, Inc.,

Defendant/Appellee

---

## APPELLANT GARY WILENS' OPENING BRIEF

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA,
HONORABLE EDWARD J. DAVILA, PRESIDING
Case No. 5:11-cv-00379-EJD

**LAKESHORE LAW CENTER**
**JEFFREY WILENS (State Bar No. 120371)**
**18340 Yorba Linda Blvd., Suite 107-610**
**Yorba Linda, CA 92886**
**(714) 854-7205**
**(714) 854-7206 (fax)**

**Attorney for Appellant Gary Wilens**

# **TOPICAL INDEX**

TOPICAL INDEX                                                                 I

TABLE OF AUTHORITIES                                                          II

STATEMENT OF JURISDICTION                                                      1

STATEMENT OF ISSUES PRESENTED                                                 1

STATEMENT OF CASE                                                             2

STATEMENT OF FACTS                                                            2

STANDARD OF REVIEW                                                           3

SUMMARY OF ARGUMENT                                                          5

ARGUMENT                                                                     6

I.     A SETTLEMENT SHOULD NOT BE APPROVED IF THE
       PLAINTIFF HAS NOT CONDUCTED SUFFICIENT
       DISCOVERY TO JUSTIFY THE TERMS OF THE
       SETTLEMENT.                                                           6

       A.     PLAINTIFFS ALLEGED A SERIOUS VIOLATION OF
              THE VIDEO PRIVACY PROTECTION ACT THAT
              ALLOWED EACH CLASS MEMBER TO RECOVER
              MINIMUM STATUTORY DAMAGES OF $2,500 BUT
              THIS CLAIM WAS RELEASED IN EXCHANGE FOR
              NO PAYMENT TO EACH CLASS MEMBER.                              10

       B.     CLASS COUNSEL DID NOT CONDUCT ADEQUATE
              DISCOVERY THAT WOULD ALLOW THEM AND
              THE COURT TO EVALUATE THE MERITS OF THE
              STATUTORY CLAIM FOR DAMAGES THAT WAS
              BEING RELEASED FOR NO COMPENSATION.                           14

CONCLUSION                                                                  23

STATEMENT OF RELATED CASES                                                  24

# TABLE OF AUTHORITIES

## CASES

<u>Acosta</u> v. <u>Trans Union, LLC</u> (C.D. Cal. 2007) 243 F.R.D. 377 ...6, 8, 9

<u>Adoma</u> v. <u>University of Phoenix, Inc</u>. (E.D. Cal. 2012) 913 F.Supp.2d 964.........................................................................7

<u>Barbosa</u> v. <u>Cargill Meat Solutions Corp</u>. (E.D. Cal., July 2, 2013, 1:11-CV-00275-SKO) 2013 WL 3340939................................. 8

<u>Garner</u> v. <u>State Farm Mut. Auto. Ins. Co</u>. (N.D. Cal., Apr. 22, 2010, CV 08 1365 CW EMC) 2010 WL 1687832 .....................7

<u>In re Omnivision Technologies, Inc</u>. (N.D. Cal. 2008) 559 F.Supp.2d 1036.....................................................................7

<u>Lane</u> v. <u>Facebook, Inc</u>. (9th Cir. 2012) 696 F.3d 811 ........... 4, 5, 6

<u>National Rural Telecommunications Cooperative</u> v. <u>DIRECTV, Inc</u>. (C.D. Cal. 2004) 221 F.R.D. 523 .......................................7

<u>Rodriguez</u> v. <u>West Publishing Corp</u>. (9th Cir. 2009) 563 F.3d 948 ...........................................................................7

<u>Staton</u> v. <u>Boeing Co</u>. (9th Cir. 2003) 327 F.3d 938......................6

<u>Sterk</u> v. <u>Redbox Automated Retail, LLC</u> (7th Cir. 2012) 672 F.3d 535 ...........................................................................11

## STATUTES

18 USC § 2710 .......................................................................10

28 U.S.C. § 1291 ...................................................................... 1

Federal Rule of Civil Procedure Rule 23....................................4

Objector and Appellant, GARY WILENS, by and through his attorney, Jeffrey Wilens, hereby respectfully submits this Appellant's Opening Brief.

DATED:  August 24, 2013

Respectfully submitted,

By _/s/_Jeffrey Wilens_____

JEFFREY WILENS
Attorney for Appellant

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over the original action pursuant to 28 U.S.C. § 1331, federal question.  This court has jurisdiction pursuant to 28 U.S.C. § 1291 after entry of the final judgment following approval of a class action settlement. (Excerpts of Record[1] pp. 3-6.)  The Notice of Appeal was filed on April 12, 2013.  (ER pp. 1-2.)  The appeal is timely pursuant to Federal Rules of Appellate Practice, Rule 4 (a) (2).

## STATEMENT OF ISSUES PRESENTED

I. DID THE DISTRICT COURT ABUSE ITS DISCRETION IN APPROVING A CLASS SETTLEMENT INCLUDING A RELEASE OF STATUTORY CLAIMS WORTH $2,500 PER CLASS MEMBER IN EXCHANGE FOR A PAYMENT OF ZERO DOLLARS TO THE CLASS MEMBERS WHEN THE

---

[1]Hereinafter ER.

1

COURT HAS NOT BEEN PRESENTED EVIDENCE THAT SUFFICIENT DISCOVERY WAS CONDUCTED?

## STATEMENT OF CASE

This is an appeal from an order granting final approval to a class action settlement and entering a judgment releasing the class members' legal claims. Appellant Gary Wilens objected to the settlement but his arguments were largely ignored by the district court. Objector Wilens filed a timely appeal. (ER, pp. 1-3.)

## STATEMENT OF FACTS

The lawsuit was filed January 26, 2011. (ER, p. 141.) Most of the early entries have to do with pro hac vice applications and requests to relate the lawsuit with other ones. (ER, pp. 142-143.) Next, a nasty battle was fought over who would serve as lead counsel, with the Edelson firm prevailing. (ER, pp. 144-145.) The Amended Consolidated Complaint was filed on September 12, 2011. (ER, p. 124.) A single mediation session was held on February 2, 2012 and a settlement was reached. (ER, p. 89.) By February 10, 2012, Netflix had filed a Notice of Settlement and the Motion for Preliminary Approval was filed on May 25, 2012. (ER, p. 147.) The actual settlement

agreement is dated end of April and early May 2012. (ER, pp. 120-123.)

Other than procedural motions relating to consolidation of cases and appointment of lead counsel, and the class settlement motion, there was no motion work in this case. As explained below, there were also no depositions and very limited written discovery.

The Settlement approved by the Court created a $9 million fund, but $2.25 million was paid to Class Counsel for legal fees, additional sums were paid for costs and administration of the settlement, substantial incentive awards were paid to named plaintiffs, and the balance was donated to various Cy Pres organizations. Nothing was paid to the unnamed class members including the Objectors. Netflix also promised to make certain prospective business practice changes in the future. (ER, pp. 8-10, 22-24, 101-106.)

## **STANDARD OF REVIEW**

An order granting final approval of a class action settlement is reviewed according to the abuse of discretion standard. A district court's approval of a class-action

settlement must be accompanied by a finding that the settlement is "fair, reasonable, and adequate." (Fed.R.Civ.P. 23 (e).) Appellate review of the district court's fairness determination sometimes is "extremely limited," and the district court determination will be set aside only upon a "strong showing that the district court's decision was a clear abuse of discretion." (Lane v. Facebook, Inc. (9th Cir. 2012) 696 F.3d 811, 818.) However, when the settlement precedes a contested certification hearing (i.e., when the class is certified as part of the settlement), the Ninth Circuit requires a "higher standard of fairness." (Id. at p. 818.)

> The reason for more exacting review of class settlements reached before formal class certification is to ensure that class representatives and their counsel do not secure a disproportionate benefit "at the expense of the unnamed plaintiffs who class counsel had a duty to represent." See id. at 1027; see also In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 787 (3d Cir.1995) (explaining that "[w]ith less information about the class" at the early stage before formal class certification, the court "cannot as effectively monitor for collusion, individual settlements, buy-offs (where some individuals use the class action device to benefit themselves at the expense of absentees),

and other abuses"). Accordingly, when reviewing a district court's approval of a class settlement reached before formal class certification, we **will not affirm if it appears that the district court did not evaluate the settlement sufficiently to account for the possibility that class representatives and their counsel have sacrificed the interests of absent class members for their own benefit**. (<u>Id</u>.)

## <u>SUMMARY OF ARGUMENT</u>

The order approving the class action settlement must be reversed because the district court did not evaluate the settlement sufficiently to account for the possibility that class counsel and the class representatives sacrificed the interests of absent class members for their own benefit. Specifically, Class Counsel promoted a settlement that pays $2.5 million to themselves and zero dollars to class members, but which requires Class Members to release a claim worth $2,500 per class member. That result can only be justified if adequate discovery showed there was little or no merit to the statutory damages claim, but the district court was not presented sufficient information about what discovery had been conducted and what that discovery showed.

5

# **ARGUMENT**

## I. A SETTLEMENT SHOULD NOT BE APPROVED IF THE PLAINTIFF HAS NOT CONDUCTED SUFFICIENT DISCOVERY TO JUSTIFY THE TERMS OF THE SETTLEMENT.

When evaluating the fairness of a proposed settlement, the district court was required to consider a number of factors including the "extent of discovery completed and the stage of the proceedings." (Lane, supra, 696 F.3d at p. 819; Staton v. Boeing Co. (9th Cir. 2003) 327 F.3d 938, 959.) As the court observed in Acosta v. Trans Union, LLC (C.D. Cal. 2007) 243 F.R.D. 377, 396:

> For Plaintiffs to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value. Similarly, for a court to approve a proposed settlement, "[t]he parties must ... have engaged in sufficient investigation of the facts to enable the court to 'intelligently make ... an appraisal' of the settlement."
> ................................................................
> In considering a proposed settlement, a court therefore bears an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement.

There are many examples of courts finding that pre-settlement

discovery was adequate. For example, in <u>Rodriguez</u> v. <u>West</u> <u>Publishing</u> <u>Corp</u>. (9th Cir. 2009) 563 F.3d 948, 956, the Ninth Circuit found there was substantial evidence that sufficient discovery had been done because more than 400,000 pages of documents had been reviewed and 30 witnesses had been deposed by one side or the other. (<u>See</u> also, <u>Garner</u> v. <u>State</u> <u>Farm</u> <u>Mut</u>. <u>Auto</u>. <u>Ins</u>. <u>Co</u>. (N.D. Cal., Apr. 22, 2010, CV 08 1365 CW EMC) 2010 WL 1687832, *13 (substantial investigation and discovery including thousands of pages of document review, numerous depositions and consultations with experts to develop statistical evidence); <u>In</u> <u>re</u> <u>Omnivision</u> <u>Technologies</u>, <u>Inc</u>. (N.D. Cal. 2008) 559 F.Supp.2d 1036, 1042 (Class Counsel took or defended 11 depositions, issued 50 subpoenas for documents, and reviewed tens of thousands of pages of documents); <u>National</u> <u>Rural</u> <u>Telecommunications</u> <u>Cooperative</u> v. <u>DIRECTV</u>, <u>Inc</u>. (C.D. Cal. 2004) 221 F.R.D. 523, 528 (settlement reached after 365 depositions were taken and hundreds of thousands of pages of documents were exchanged by the parties); <u>Adoma</u> v. <u>University</u> <u>of</u> <u>Phoenix,</u> <u>Inc</u>. (E.D. Cal. 2012) 913 F.Supp.2d 964, 977 (five depositions and exchange of

documents and formal written discovery); <u>Barbosa</u> v. <u>Cargill</u> <u>Meat</u> <u>Solutions</u> <u>Corp</u>. (E.D. Cal., July 2, 2013, 1:11-CV-00275-SKO) 2013 WL 3340939, *14 (Class Counsel analyzed 2,143 pages of meal and rest break records, took or defended four depositions, and conducted detailed in-person interviews of class members).)

On the other hand, in <u>Acosta</u> v. <u>Trans</u> <u>Union,</u> <u>LLC</u>, <u>supra</u>, 243 F.R.D. 377, 396-97, the district court found a settlement that was deficient due to insufficient discovery. The court observed that Class Counsel in that case relied upon a "discovery bank" collected from other lawsuits but noted the other discovery was not focused on the specific issue raised in the lawsuit being settled or contained outdated information. (<u>Id</u>. at p. 396.) Class Counsel also served 172 interrogatories and 143 requests for production <u>but</u> only received substantive responses to 14 of the interrogatories and only received 79 pages, none of which addressed the key issue. (<u>Id</u>. at p. 396.) Three depositions were taken but only one was of someone with knowledge pertinent to the key issue. (<u>Id</u>. at p. 397.) Twenty-six declarations were submitted but all but one were from a

named plaintiff or one of the attorneys.

The court summarized its findings: "For litigation involving claims for liability of the magnitude of those here, this is scant discovery indeed, and understandably did little to bestow upon Plaintiffs a thorough understanding of the credit reporting process." (Id. at p. 397.) The court further observed:

> As an artifact of this incomplete investigation into their case, Plaintiffs are now unable (1) to quantify the frequency of the erroneous reporting upon which their claims were based; (2) to discern approximately how costly it would be for Trans Union and Equifax to correct their reporting procedures; (3) to apprise the extent to which the "scrubbing" included in the Settlement's injunctive procedures would eliminate current inaccuracies in Plaintiffs' credit histories; or (4) to objectively estimate how much Trans Union and Equifax would be required to pay class members under the Settlement's economic relief provisions. (Id. at p. 397.)

As will be demonstrated below, the district court in the instant case also should not have approved the settlement because Class Counsel conducted insufficient discovery. The critical issue that needed to be explored through discovery or other credible means of investigation was whether violated one

of the   relevant laws which violation carried a mandatory $2,500 penalty per class member.  Rather than requiring Class Counsel to present evidence of the discovery that was supposedly conducted and what the discovery showed, the district court simply accepted at face value unsupported vague assurance from Class Counsel that they had conducted adequate discovery and that the information obtained proved Netflix did not commit the violations carrying the mandatory $2,500 penalty.

> **A.  PLAINTIFFS ALLEGED A SERIOUS VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT THAT ALLOWED EACH CLASS MEMBER TO RECOVER MINIMUM STATUTORY DAMAGES OF $2,500 BUT THIS CLAIM WAS RELEASED IN EXCHANGE FOR NO PAYMENT TO EACH CLASS MEMBER.**

The Video Privacy Protection Act (VPPA), 18 USC § 2710, places restrictions on "video tape service providers" (providers). Since the definition of those providers includes services that rent or deliver video tape or similar audio visual materials, the Parties apparently conceded Netflix is a video tape service provider.

Plaintiffs alleged two violations. Subdivision (b) of section

2710 states that a provider who "knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person. . . ." There are exemptions not pertinent to this appeal. Subdivision (c) provides that any person aggrieved by a violation of this section can recover "actual damages but not less than liquidated damages in an amount of $2,500."

Subdivision (e) requires providers to destroy old records containing personally identifiable information (PII) as soon as practicable but no later than one year from the date the information is no longer needed for specified purposes. However, it appears there is no private remedy for a violation of this subdivision. (Sterk v. Redbox Automated Retail, LLC (7th Cir. 2012) 672 F.3d 535, 539.)

The approved settlement released Class claims under both subdivisions. (ER, pp. 98:13-99:24, 106:19-24.) The settlement paid zero dollars to Class Members, even those with statutory claims entitling them to recover a minimum of $2,500. Instead, $9 million, less substantial legal fees, incentive awards and other expenses, were to be donated to

various Cy Pres organizations and Netflix promised to make certain prospective business practice changes in the future. (ER, pp. 101-106.)

The fundamental issue raised by Objector Wilens and in this appeal is whether it was fair to release individual claims for which no compensation was being paid to the person being deemed to have released the claims, especially where the claims carry a statutorily mandated damages award.  Although the settlement also provides for injunctive relief, that is limited to practices to be taken after an account has been closed for a year, which does not address the illegal sharing of information that might have occurred earlier.

Class Counsel convinced the district court that this "freebee release" of valuable claims was tolerable if not justified because there were no violations of subdivision (b). Admittedly, if Netflix never illegally shared PII, then there was no harm from the uncompensated release of claims for violation of subdivision (b).  But if Netflix did violate subdivision (b) with respect to some or all of the Class Members, then there was tremendous harm to those Class Members, who were (unless

they opted out) being compelled to release claims carrying a minimum civil penalty of $2,500 in exchange for <u>nothing</u>. In this latter scenario, the release was grossly overbroad or the settlement consideration was grossly inadequate to release such a valuable claim.

Objector Wilens pointed out this flaw, but the District Court dismissed it with the following analysis:

> Before settlement, discovery was on-going. Plaintiffs have propounded, and Netflix responded to, formal written discovery questions including interrogatories and requests for the production of documents. See Final Approval Motion Ex. C, Declaration of Jay Edelson ¶¶ 64. Class Counsel also engaged in informal discovery with Netflix's Vice President of Product Engineering and its Vice President of Marketing and Analytics. Id. These discovery efforts allowed Plaintiff's counsel to accurately valuate by compiling information ranging from the extent to which Netflix compiled and collected PII to the number of members that might fall into the Class. Id. ¶¶ 62–64. While formal discovery had not been completed, Class Counsel has established that they had acquired sufficient information to make an informed decision about the valuation of the case, potential obstacles and pitfalls, and likelihood of success so to as effectively engage in settlement

negotiations.  (ER, p. 19.)

Careful review of the information provided by Class Counsel to the Court reveals the district court was apparently misled by or at least too trusting of vague assurances of Class Counsel.

**B.    CLASS COUNSEL DID NOT CONDUCT ADEQUATE DISCOVERY THAT WOULD ALLOW THEM AND THE COURT TO EVALUATE THE MERITS OF THE STATUTORY CLAIM FOR DAMAGES THAT WAS BEING RELEASED FOR NO COMPENSATION.**

As will be demonstrated below, there was no evidence that sufficient discovery was conducted to justify abandonment of the statutory damage claims.  Class Counsel never "established" the discovery was sufficient.  Class Counsel simply assured the court the discovery was sufficient, presented no proof of this, and the district court took their word for it.  A class settlement motion must be treated like an algebra examination; it is not sufficient for Class Counsel to state  his answer, he needs to "show his work."  He needs to show the Court what discovery was conducted on the critical issues and what that discovery established.  Otherwise, the district court cannot do its job of evaluating the fairness of the settlement.

In the declaration supporting the Motion for Preliminary Approval, lead Class Counsel Edelson claimed the settlement would help prevent Netflix's disclosure of customer personal information in violation of the VPPA. (ER, p. 89:16-25.) He also claimed that his firm had "diligently investigated and prosecuted this matter, dedicating substantial resources to the investigation of the claims at issue in the action. . . ." (ER, p. 90:9-14.) However, no details were provided regarding this "investigation" other than that his firm propounded and Netflix responded to "discovery related to both class and merits issues." It is not clear from that declaration whether any discovery was obtained concerning the "knowing disclosure of PII" theory or not. If it were obtained, the results were not stated in the preliminary approval papers.

The Motion for Final Approval provided some additional information but not much more. In Edelson's declaration supporting final approval, he explained why his firm initially believed in good faith that Netflix was sharing personal information in violation of the VPPA. (ER, p. 69:14-24.) Reversing direction, Class Counsel then explained:

> During the course of the litigation, we learned that Netflix did not (and does not) sell its customers' PH for profit, or share that PH to data analytic companies in connection with its recommendation algorithm. Rather, we learned that Netflix handles all of its data analytic needs in-house and has a policy of not selling customer PH for profit. We subsequently confirmed these informational findings through the informal deposition of two Netflix executives-its Vice President of Product Engineering and its Vice President of Marketing and Analytics. (ER, p. 70:10-15.)

Apparently Class Counsel also relied on information fed to him from Netflix's counsel on March 7, 2011 regarding "the type of customer information retained by Netflix and the advanced algorithms used to collect that information." (ER, p. 80:20-23.)

The foregoing was not satisfactory or sufficient investigation and discovery. First of all, liability under subdivision (b) need not be premised on a showing that PII was "sold" to someone or shared with a third party for a particular purpose, but rather liability is established if was "knowingly disclosed" to any third person. Mr. Edelson's carefully worded statement quoted above declared only that his investigation confirmed Netflix did not <u>sell</u> the information <u>for</u> <u>profit</u> and

16

that Netflix did not <u>share</u> the information for <u>one</u> particular purpose (to maintain its recommendation feature). This left open the possibility that Netflix sold the personal information not for profit but maybe in exchange for something useful provided by third party. For example, Netflix could have traded personal information about movie viewing habits with another company that had information Netflix wanted. It also left open the possibility that Netflix shared the personal information for other reasons not related to the recommendation algorithm.

Secondly, Mr. Edelson did not "show" his work. He did not explain how he "learned" what Netflix was doing with the personal information. Although Edelson claims he received responses to interrogatories and document production, there were no discovery responses attached to the motion papers, no summaries of the responses, and nothing to suggest those discovery responses bore on the question whether Netflix was violating subdivision (b). In fact, Edelson admitted that the total number of interrogatories submitted by both sides was only 25 and the total number of requests for production

submitted by both sides was 59.  (ER, p. 81:1.)  Although Edelson claims he interviewed some Netflix subscribers, there is no evidence of what they said in relation to the disclosure of personal information cause of action.  (ER, p. 80:15-16.) Presumably he did not tell any of those class members that they had a claim worth $2,500 but he intended to sacrifice it for a large attorney's fee award.  It appears there were no requests for admissions or any formal depositions, and there is no indication how many pages of documents were received and reviewed.

Thirdly, the "confirmation" was from two "informal depositions."  What is an "informal deposition"?  Is that a phone conference not under oath?  A conversation over a few drinks at the sport's bar next to the mediation office?  Neither Class Counsel nor Netflix submitted any declarations from the Netflix executives stating under oath that Netflix had not disclosed PII to any third party under any circumstances (or if it did, under which circumstances).  No weight should have been given to the information obtained by "informal deposition" since it was never backed up under oath.

Plaintiffs may insist they could not have attached discovery responses (or even have summarized them) because the information was subject to a protective order, but that argument would be ridiculous.  How would Netflix's discovery responses stating it did <u>not</u> share personal information with any third party for any reason possibly be confidential information subject to a protective order?  And if Class Counsel did not even conduct discovery with respect to a violation of subdivision (b), then how could that failure to conduct discovery be subject to a protective order.  The only piece of information that might be subject to a protective order would be Netflix's disclosure that it <u>did</u> share personal information under certain circumstances.  But that would not be a secret Netflix gets to keep if it wants approval of a class action settlement.

The district court also apparently relied on unspecified information provided by Netflix to Class Counsel at the mediation that led to the settlement.  However, Mr. Edelson's declaration is extremely opaque regarding what was disclosed (if anything) at the mediation about the sharing of personal information.  We are only told that a mediation was held on

19

February 1, 2012 and that topics discussed included the "relative strength of Plaintiffs' claims, Netflix's defenses, and exchanges of information." (ER, p. 70:20-23.) From that vague reference, Class Counsel assured the Court that "[c]onsidering the information provided by Netflix at the February 1,2012 mediation, my firm estimated the likelihood of succeeding on the merits under a theory of unlawful disclosure at less than five percent (5%)." (ER, pp. 74:27-75:3.)

What information was provided at the Mediation? Who knows? Was it a sworn statement or just spin from one of Netflix's attorneys? Was it told to Class Counsel or to the Mediator who then passed it on to Class Counsel? Objector Wilens appreciates that statements made at a mediation are privileged, but the district court abused its discretion by accepting at face value vague representations that something really important was said at the mediation about the subdivision (b) claims. Certainly, there was no basis for the district court to take Edelson's word for it that the chance of success was less than five percent.

Significantly, after Objector Wilens raised the same

argument being presented in this brief, Class Counsel had a last opportunity to present evidence regarding the discovery that was supposedly conducted and the contents of that discovery. Class Counsel submitted a lengthy declaration in reply to the objections, but failed to address the insufficient discovery issue. (ER, pp. 30-56.) Instead, he wasted pages of his declaration personally attacking counsel for the Objectors and concocting imaginary conspiracies.  In particular his response to Objector Wilens acknowledged that counsel for Objector had contacted his office <u>before</u> any objection was even made, and had requested access to the discovery that supported abandoning the statutory damages claim, but Edelson refused to produce any documentation and would not cooperate in any way.[2]  (ER, pp. 36-37, 43-63.)

---

[2]Objector's counsel is not going to discuss Edelson's paranoid belief the undersigned did not have a client.  Suffice it to say that from time of the undersigned's initial pre-objection communications with the Edelson firm through this appeal, the undersigned was representing Gary Wilens.  However, Edelson's non sequitor comments, evasive responses and arrogant disdain (even threatening Objector's counsel with disbarment) which are evident in his letters proved to be foreshadowing for his similar treatment of legitimate points made by this and other Objectors.

Finally, the district court apparently accepted Plaintiffs' argument that even if there were liability under subdivision (b), it was still fair to require Class Members to release their claims in exchange for zero dollars because otherwise the damages might be too high. Class Counsel noted that the theoretical statutory damages at $2,500 per Class Member could be $150 billion, a figure that would surely bankrupt Netflix. Of course, Class Counsel acknowledges a court would likely reduce the statutory penalty to reflect constitutional concerns about excessive penalties. (ER, p. 75:11-19.) Class Counsel did not consider even a reduced sum to be something Netflix could afford to pay.

Yet, Class Counsel also oddly suggested that the "best-case recovery" under subdivision (b) would be $3 million plus attorney's fees. (ER, p. 75:20-21.) How Class Counsel got from $150 billion to $3 million was not explained very persuasively. Apparently the district court would just arbitrarily determine that the Class Member's actual damages were a few cents per violation and impose that instead of the $2,500 per violation statutory penalty.

Here is another way to look at this excessive damages concern. If Netflix were adamant that it would not pay any damages to the Class, then the solution would have been to order the Parties to modify the scope of the release by deleting the waiver of claims for damages under subdivision (b). If Netflix was not willing to pay for a release of those claims, it should not have been given one by the district court.

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the district court's approval of the class action settlement and remand for further proceedings.

DATED: August 24, 2013

Respectfully submitted,

By _/s/_Jeffrey Wilens_____

JEFFREY WILENS
Attorney for Appellant

23

## **STATEMENT OF RELATED CASES**

The following consolidated appeals have been filed by objectors from the class action settlement and attorneys' fee award: Nos. 13-15733, 13-15734, 13-15751, 13-15754, and 13-15759.

## **CERTIFICATE OF COMPLIANCE**

I, Jeffrey Wilens, do hereby certify the following:

Pursuant to the Federal Rules of Appellate Procedure Rule 32 (a) (7) (C) and Ninth Circuit Rule 32-1, the attached opening brief was prepared with Microsoft Word 2007, is proportionately spaced, has a typeface of 14 points or more and contains 4,125 words (not exceeding 14,000) excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed this 24th day of August 2013 at Yorba Linda, California.

_/s/_Jeffrey Wilens_____

Jeffrey Wilens

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 24, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

_____/s/_Jeffrey Wilens_____

Jeffrey Wilens